# WILLIAM M. WHITE, Appellant, v. RICHARD L. SPENCER.

### In Banc, March 9, 1909.

1. **JUDGMENT LIEN: Homestead: Prior to Levy.** As against a homestead proper—that is, the tract which, within the statutory limitations, both as to quantity and value, is occupied and claimed as a homestead—there is no such thing as a dormant lien, and as to it no̸ judgment lien attaches, before or after execution and levy. But where there is an existent judgment and the judgment debtor owns a tract in excess of the homestead proper, either in quantity or value, and theretofore held as a part of the homestead tract, but not burdened with the house occupied, the judgment lien does attach to such excess, before either execution or levy or admeasurement of homestead; and if the said excess is conveyed by the judgment debtor to pay a valid existing indebtedness the grantee takes it burdened with the judgment lien, and if after the said conveyance execution issues and is levied against the excess and it is bought in by the judgment creditor at a price less than the judgment debt he takes the title free from the burden of the conveyance, and in ejectment against the grantee therein he is entitled to judgment for possession. [Disapproving so much of Macke v. Byrd, 131 Mo. 672, as holds that the judgment is not a lien on the surplus or excess until after execution, levy and admeasurement of homestead.]

2. ————: ————: ————: **Admeasurement of Homestead: Agreement of Parties.** After the judgment against the homesteader, whose homestead was in a city having a population of forty thousand, he and his attorney, to whom he owed a fee of $400, discussed the fact that he had more land than he could hold under the homestead statute, and he selected the eighteen square rods or more which he could hold, and deeded the balance to the attorney in satisfaction of the debt, and no other admeasurement of homestead was made when execution and levy were made under plaintiff's judgment. *Held*, that, where the surplus is dependent solely upon quantity rather than value, as in this case, the judgment creditor, as well as the purchaser from him, are bound by the selection of the homestead thus made, as fully as if it had been made under execution.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles C. Crow* and *Eastin, Corby & Eastin* for appellant.

(1)  The fact that the judgment debtor separated by calculation the land described in the petition from the land retained as his homestead, and deeded that portion not retained to defendant, constituted an abandonment of the homestead in the portion conveyed away, and, the cover of the homestead having been removed, plaintiff's judgment lien attached.  Smith v. Thompson, 169 Mo. 553; Osborn & Co. v. Evans, 185 Mo. 509; Kaes v. Gross, 92 Mo. 647; O'Brien v. Woeltz, 94 Tex. 148.  Abandonment is a question of fact, and each case rests upon its own peculiar circumstances, and actual removal from the homestead, with no intention to return, amounts to a forfeiture of the right, as against creditors and purchasers.  Kaes v. Gross, 92 Mo. 647.  The intention of the homesteader is a material matter in determining whether the homestead has been abandoned.  Mills v. Mills, 141 Mo. 195; Rollins v. O'Farrell, 77 Tex. 90.  In the case at bar the grantor of defendant determined the amount of land he would be entitled to hold as a homestead, withdrew his homestead claim from the whole tract and fixed it upon the land retained, and conveyed the remainder to the defendant.  He said his intention was to pay what he considered a just debt instead of the judgment against him.  There was no evidence contrary to this, and as soon as this intention was formed and the lines drawn, whether actual or by calculation, the lien of the judgment attached and plaintiff's title by the sheriff's deed holds the land.  (2) Macke v. Byrd, 131 Mo. 682, is not in point. That case decides that the lien of a judgment does not attach to the homestead property as against the homesteader or his vendee,

and it may be conceded in this case that if Gibson had never set off and sold the land here sued for, but had held the same as a homestead and had sold the whole, the case would be in point. Where a judgment debtor is the head of a family and in possession of land claiming it as a homestead, the whole constitutes the homestead, until it is deprived of that character by abandonment of part or all, or by legal proceedings to set off the excess. In Macke v. Byrd, there was neither an abandonment nor a legal assignment of the homestead, and the sale was allowed to stand. In this case there was an abandonment of the excess and as soon as that occurred the lien attached. The only land the judgment debtor can hold or sell free from the lien of the judgment is the homestead. The only land a purchaser can buy free from the lien is homestead land. The land sold in this case was not homestead land, because the debtor retained his homestead in other land.

*Spencer & Landis* for respondent.

(1) The question of abandonment of homestead cannot be raised unless made an issue by the pleadings. Bealey v. Blake, 153 Mo. 657. (2) The trial court, sitting as a jury, heard the evidence and found for defendant. No instructions were asked or given and its finding cannot be disturbed. Mauch v. Hornback, 109 Mo. App. 624; Bank v. Barbee, 198 Mo. 465. (3) A homesteader may convey by deed a part or all of the excess of quantity or value of the homestead beyond the statutory maximum before the ascertainment and set out the part to which the exemption should apply. Macke v. Byrd, 131 Mo. 682; Smith v. Thompson, 169 Mo. 561. (4) A judgment lien will not attach to the surplus in value or quantity of a homestead until ascertained by an admeasurement of the proper homestead and until such admeasurement is

made according to law there is no impediment to a sale of the homestead or of the excess thereof on account of such judgment lien. Macke v. Byrd, supra. And the vendee of the homesteader is equally protected in such sale. Macke v. Byrd, supra.

## IN BANC.

PER CURIAM:—Upon a consideration of this case by the Court in Banc, the opinion in Division was slightly modified in language, and adopted as the opinion of the Court in Banc, all the judges concurring therein.

## IN DIVISION ONE.

GRAVES, J.—The facts pleaded and proven in this case can be stated in small compass, which when considered leaves but one sharp issue of law. William E. Gibson was the owner of the west ten feet of Lot 32, and all of Lots 33 and 34, in Block 6 in Carbry's Addition to the city of St. Joseph, Missouri, which tract made a parallelogram sixty by one hundred and forty feet. The frontage of sixty feet was on Beattie street and that of one hundred and twenty on Twentieth street. Upon this tract was the residence of Gibson, and the whole was fenced as one tract and held, used and claimed by him as his homestead up to May 24, 1902, he being the head of a family. May 1, 1902, the plaintiff herein recovered judgment against Gibson in the circuit court of Carroll county, Missouri, for $3,217.83. On the 3d day of May following, a transcript of such judgment was filed with the clerk of the circuit court of Buchanan county, wherein was situated the property of Gibson, described as aforesaid. On May 24, 1902, Gibson being indebted to defendant for legal services in the sum of $400, did, for

and in consideration of that debt, deed to defendant the west ten feet of Lot 32, aforesaid, and thirty-three feet off of the north end of Lots 33 and 34, aforesaid. On May 12, 1904, plaintiff in this cause had a general execution issued upon his transcript judgment and the land previously conveyed to defendant Spencer was levied upon and sold to plaintiff, the consideration at the sheriff's sale being five dollars. The record also shows that prior to the deed to Spencer, Gibson's homestead had never been admeasured or set off to him out of the tract first described herein above. It also stands admitted that the tract remaining and at the time of the trial held and claimed by Gibson as his homestead was a little in excess of eighteen square rods. In describing the transaction when this deed was made, Mr. Gibson, as a witness, said:

"Q. You say that you owed Mr. Spencer at that time? A. Yes, sir.

"Q. And you made him this conveyance to pay his debt? A. I did.

"Q. State whether or not you figured up the size of the homestead which you would be allowed at that time and undertook to convey him the excess? A. I did not, but another man did.

"Q. That was your purpose? A. Yes, sir.

"Q. And what you undertook to retain there, what you did retain there, you now hold as your homestead? You undertook to release that? A. I did.

"Q. Now, Mr. Gibson, what is the value of that land which you retained there? A. The land I retained?

"Q. Yes, with your house and improvements on it? A. I suppose it is worth twenty-four or five hundred dollars.

"Q. Do you recall what you scheduled it at when you filed an application to be adjudged a bankrupt? A. I think it was three thousand dollars.

"Q. At that time you had already sold off this to Mr. Spencer? A. No, I think not. I don't recollect.

"Q. You remember you made your deed to Mr. Spencer in the same month the judgment was rendered against you down there? A. I guess I did.

"Q. You did not apply for a discharge in bankruptcy until some year or two afterwards? A. I don't recollect what I scheduled it at, but I never valued the place as a whole at three thousand dollars and I will take to-day $2,500 for what I have got there.

"Q. Now, at the time you made this deed to Mr. Spencer, you expected Mr. White to undertake to levy upon this excess, and have it set off? A. I suppose so.

"Q. And it was for the purpose of giving it to Mr. Spencer instead of him? A. For the purpose of paying a just debt instead of what I considered an unjust debt.

"Q. It was for the purpose of giving it to Mr. Spencer instead of letting Mr. White get it? A. The man I justly owed.

"MR. SPENCER: We object to that.

"THE COURT: I don't see the relevancy of it.

"Q. You say it was for the purpose of paying a just debt instead of an unjust one? A. One I recognized as my debt.

"Q. Instead of one you thought was unjust? A. Yes, sir, instead of one I thought then, and think now, and always will, was unjust.

"Q. The judgment Mr. White had? A. Yes, sir.

*"Direct Examination, by Mr. Spencer.*

"Q. Was there anything done by you, or for you, towards setting out your homestead prior to the making of the deed by you and your wife to me of your homestead?

"Objected to by plaintiff.

"Objection overruled.

"Q. Was there anything done by you, or any one for you, towards setting out a homestead there prior to the making of the deed to Richard L. Spencer? A. No, sir.

"Q. What was done and said at the time of making the deed with reference to it?

"Objection.

"THE COURT: State what was done.

"Plaintiff objects.

"THE COURT: He is not undertaking to prove the contents of the deed, he is undertaking to find out when the homestead was set out.

"THE WITNESS: It was set out immediately preceding the deed.

"THE COURT: Was it set out preceding the deed?

"THE WITNESS: I said immediately—I mean before the making of the deed Mr. Spencer come to me and told me that I owed him justly, and that he would take the excess of my homestead for the fee, and he figured it out.

"THE COURT: What did you do about setting off your homestead before this deed was made?

"THE WITNESS: Didn't do anything, only just at the time it was made, I made the deed immediately.

"THE COURT: Then what did you do?

"THE WITNESS: Made the deed.

"Q. Were there any measurements staked off or division made of the property prior to the making of the deed? A. No, sir.

"Q. Was there anything done at the time of making the deed except at the time of making the deed a measurement was made there of what you would grant me, and that there was a homestead and a little in excess left there to you? A. Yes, sir.

"Q. Was that all that was done? A. Yes, sir.

"Q. Up to the moment of making the deed was

that all made under one enclosure, and held and claim-
ed by you as a homestead? A. Yes, sir.

"Cross-examination by Mr. Eastin.

"Q. I don't quite understand you—you said that
just before the deed was made, this ground that was
to be conveyed to Mr. Spencer was enclosed? A. He
came to me with the proposition; I told him to measure
off and leave me the homestead and I would deed him
the balance. I done so.

"MR. SPENCER: Was the making of the deed and
the doing of that one transaction?

"THE WITNESS: Yes, sir.

"Q. But you had to get what was the homestead
out before the deed was made? A. Yes, sir.

"MR. SPENCER: Was it all one transaction?

"THE WITNESS: Yes, sir.

"THE COURT: You say he figured it out?

"THE WITNESS: Yes, sir.

"THE COURT: Were there any stakes driven or
anything there before the deed was made?

"THE WITNESS: No, sir, never was a stake driven.

"Q. What did you do to mark out your homestead
before this deed was made? A. Didn't do anything;
when he came he couldn't get the excess on one side of
the house or the other side; that is the reason the ten
feet was taken off the east side of the property and
the balance off the rear.

"MR. SPENCER: You wanted to retain your home-
stead?

"THE WITNESS: Yes, sir. Didn't want somebody
else jammed up against me.

"MR. SPENCER: Was the making of this deed and
the cutting off of the excess all one transaction?

"THE WITNESS: Yes, sir.

"MR. EASTIN: You didn't need any stakes?

"THE WITNESS: No, sir, didn't need any stakes

"MR. EASTIN: When you fixed this deed or when

you determined what should go in the deed you had a clear idea how much you conveyed off on each side?

"THE WITNESS: Yes, sir.

"MR. EASTIN: You had to have your idea before you made your deed.

"THE WITNESS: I did have it.

"MR. EASTIN: And you didn't claim this that was conveyed away—didn't expect to claim it as your homestead?

"THE WITNESS: No, sir.

"THE COURT: Did you claim it up to the time the deed was made?

"THE WITNESS: Yes, sir.

"MR. SPENCER: You claimed that up to the time of making the deed as part of your homestead?

"THE WITNESS: Yes, sir.

"MR. EASTIN: You know Mr. White had a judgment against you at that time?

"THE WITNESS: Yes, sir.

"MR. EASTIN: And that he had the power to set this excess off?

"THE WITNESS: That is a question. He didn't do it.

"MR. EASTIN: You knew he had the power to do it?

"MR. SPENCER: We object to that.

"THE COURT: He stated before that he made this conveyance and did it for the purpose of preventing Mr. White from getting any judgment lien on this property."

The suit in hand is one in ejectment for the land conveyed by Gibson to Spencer.

The answer pleads all the facts hereinabove set out and closes with this prayer: "Wherefore, defendant having fully answered asks to be discharged with his costs, and prays the court that said judgment and the sheriff's deed thereunder be declared a cloud upon defendant's title, and that the same be declared no lien or encumbrance against the title of defendant,

and that the title of defendant as to said judgment and sale thereunder be declared to be in defendant, and for such other and further relief as may be proper and just in the premises."

By its judgment the court, *nisi*, found the issues for the defendant and against the plaintiff and further decreed that the title to said property was in defendant and that plaintiff's sheriff's deed was a cloud upon such title, and that the same be declared null and void and to be no lien or incumbrance upon defendant's title. Costs were also adjudged against plaintiff. Timely motion for new trial proving of no avail, plaintiff brings the case here.

We have quoted liberally from the testimony and purposely so on account of the conceived importance of the case.

Boiled down, the evidence of Gibson, the judgment debtor, is to the effect that he used and claimed the whole tract as a homestead up to the time of making the deed to defendant; that he and defendant agreed that there was a surplus in quantity and for that reason the whole tract could not be held as a homestead; that he preferred to pay defendant, whose debt he recognized as an honest obligation, rather than the judgment debt, which he did not so recognize; that they estimated the amount of the surplus and he immediately made the deed thereto; that thereafter he held and claimed the remainder as his homestead; that whilst such remainder might be a few feet in excess of the quantity allowed in cities having a population of forty thousand inhabitants, it was less in value than $3,000, the prescribed limit in value. Under this testimony and the other facts heretofore narrated, we conceive the real questions raised to be these: (1) Was this transcript judgment a lien upon the amount of this tract of land which was in excess of the homestead? (2) Under the facts was there or could there be an

abandonment of this part in such a way as would make plaintiff's judgment effective?

But, after all, an answer to the first question practically settles the controversy, for if there was no judgment lien, a deed for a valuable consideration, made prior to an execution levy, as in this case, would be good. We mention the question of abandonment because it is urged in the briefs. To our mind the case turns upon the sole question as to whether this judgment was a lien against the surplus in quantity. If it was a lien then the sale under execution relates back to the date of the judgment lien and cuts out the deed of defendant. If it was not a lien of some kind, the land was clear, and a bona-fide deed to all or any portion thereof is good, if made before actual levy, as in this case. This question we propose to discuss, but with some diffidence, in the light of the broad language of some of our previous decisions. As against a homestead proper, under the rule in this State, there is no such thing as a dormant lien. By homestead proper, we mean that tract of land, which being within the statutory limitations, both as to quantity and value, is held, occupied and claimed as a homestead. As to such a tract of land, no judgment lien attaches. To be explicit and to make an application in the case at bar, if Gibson had owned a tract of land eighteen square rods in dimensions or less, and in value $3,000 or less, then in no event could a judgment lien attach. This for the reason that the real purpose of the law is to secure so much property as absolutely exempt from attachment and execution and leave it in a shape so that it may be sold and the proceeds thereof invested in another homestead. Such is the spirit of our homestead act, as by this court construed. But should this broad rule apply in a case where there is a judgment and at the date of the judgment the judgment debtor has a tract of land in excess of a homestead, either in value or quantity? Confining it to the case at bar.

should the doctrine apply where the judgment debtor owns property in excess of the quantity allowed by statute? In such case is there no lien which could and does attach to the surplus, until after execution and levy? This is the vital question in the case at bar.

Following the broad language of the case of Macke v. Byrd, 131 Mo. 682, no judgment lien attaches to any part of a tract, owned, occupied and claimed as a homestead, until after execution, levy and admeasurement of the homestead, at which time the surplus may be sold—not by virtue of a judgment lien, but by virtue of the levy and subsequent proceedings thereunder. Is this doctrine correct? If so, we may have a judgment debtor who owns one thousand acres of land in one body, under one inclosure and used and occupied as a homestead. Such tract would of course exceed the statutory limitation as to quantity. Yet if no lien attached to the tract prior to levy and notice, he could sell off tract after tract until he reduced his possessions to 160 acres in quantity, or if shrewd enough, until he reduced it to $1,500 in valuation, and thus defeat a judgment which, under the general statute, is a valid lien upon all property, except his limited homestead, for a period of three years. Under the general statute the creditor is not compelled to push his lien under three years, the life of the lien, and if properly renewed, until the life of the renewal or renewals.

The case of Macke v. Byrd is substantially this: Under two executions in 1876 there was set off to Ranney in the manner prescribed by law 105 acres of land as his homestead. In August, 1885, Ranney conveyed by deed to Mrs. Byrd. Prior thereto, that is to say, in 1883, Macke obtained judgment against Ranney for $737.80. The sale price between Ranney and Mrs. Byrd was eleven hundred dollars in excess of the homestead limit. It also appears that in July, 1885, Ranney had a contract with Mrs. Byrd's husband to sell the land to him for $2,600. Whereupon Macke sued out his

execution and garnisheed Byrd. Ranney refused to make Byrd the deed, and Mrs. Byrd purchased later. Byrd was discharged as garnishee. He and his wife moved into the property and in 1886 Macke sued out *scire facias* to revive his judgment, making Mr. and Mrs. Byrd parties; they, however, were discharged by the court. Then in 1888 Macke brought suit against Mr. and Mrs. Byrd to cause the homestead to be re-assigned and that part in excess of $1,500 to be subjected to the payment of the plaintiff's judgment demand. The court, *nisi*, found for Macke, appointed appraisers to re-assign the homestead, and the Byrds brought the case here. In the discussion of that case the learned judge writing the opinion propounds this question: "But does the lien touch or hold the surplus of size or value of the homestead?"

The opinion then proceeds to answer the query thus put, portions of which answer are in this language:

"This right of selection (as well as other provisions of the homestead law, mentioned later) cannot be reconciled with the idea that, as against the debtor, the judgment lien reaches the excess of quantity or value of the homestead beyond the statutory maximum, before an ascertainment, and setting out, of the part to which the exemption shall apply . . . The rights of selection and exchange of homesteads, as given to judgment debtors by sections 5436 and 5442 [R. S. 1889], could not be fully enjoyed, if it were held that the lien of a judgment reached, and secured to the creditor, an uncertain part of the homestead property, without an ascertainment of the surplus to which the lien could attach, as provided by law.

"The Missouri homestead may be moved about, under the protection of section 5442. It cannot be fastened to one spot by a judgment lien, which would be the consequence of permitting it to be sold on execution subject to the homestead right.

"In contemplation of section 5436 the surplus, above the statutory measure, is not available on execution until ascertained and determined by location of the true homestead itself, in the manner prescribed.

"The homestead in dispute in the present case was fixed and defined by the action of appraisers, the sheriff and the court, under the Houck executions in 1876, and the debtor had the right to all the privileges of a homestead owner as to that property, so set off (including the right to sell it), until some creditor should, by proper steps, attack the former allotment of the homestead as to quantity or value. This might be done at any time by proceeding under sections 5436 or 5444; but until that course was taken by some one, the debtor was entitled to the full enjoyment of all his rights in and to the homestead property, including the power of disposal, of which he took advantage in this case.

"The fact that Ranney realized by his sale more than the statutory amount to which the homestead is limited, is of no concern, as against the purchaser of it from him, in such action as this by the judgment creditor.

"If, as we hold, the lien of judgment did not attach to the surplus in value, until ascertained by an admeasurement of the proper homestead, then the lien of judgment was no impediment to a sale of the homestead by the debtor as the statute permits."

The purport of this broad language in the Macke-Byrd case is in our judgment to the effect that if a tract of land is held, used and claimed as a homestead, then, although there may be a surplus either in quantity or value, no judgment lien attaches until levy is made and an admeasurement of the homestead is had under the execution and levy, and this too in the face of the fact that judgment liens attach for three years as against all property, save the homestead, which homestead, by law, has fixed limitations both as to

quantity and value. This is the construction which VALLIANT, J., placed on the Macke-Byrd case, in Smith v. Thompson, 169 Mo. l. c. 561, whereat he said: "We have construed our statute to mean that the judgment lien does not attach to such land either as against the homesteader or his vendee, so as to render the land in the hands of the vendee liable for the excess in value above the amount allowed as exempt, in a case where the homesteader had sold the land for more than the exempt value (Macke v. Byrd, 131 Mo. 682). In that case it was pointed out that our statute attached the lien of a judgment only to 'lands, tenements and hereditaments liable to be sold upon execution' (Sec. 3750, R. S. 1899), which was not the condition of lands occupied as a homestead. And it was further shown that if more land in quantity or value was so held the excess could only be reached under execution by following the procedure marked out in the statute for setting out the homestead."

In our opinion, taking the broad language of the Macke-Byrd case, it in effect holds that there is no lien against the surplus, whether such surplus in the homestead tract is the result of either quantity or value, until such time as there has been an appraisement and admeasurement of the homestead. If it so holds, in our humble judgment it is wrong. We have read the full text of the Vermont case cited therein, and we do not feel that it furnishes a basis for the broad conclusions reached. These conclusions say that the surplus whether occasioned by the excess of quantity or excess of value is not impressed with the judgment lien. In this the opinion goes beyond the facts of the case in hand. The real issue in the Macke-Byrd case was whether or not, where there had been a previous ascertainment of a homestead in the manner prescribed by statute, and there was an increase in value after such ascertainment, and whilst still held by the original homesteader, could such surplus occasioned by the

increase in value, be the subject of a judgment lien of a judgment procured after the first ascertainment of the homestead. Had the Macke v. Byrd opinion strictly conformed to this issue, it would have been correct. It is correct in the conclusions reached upon the real facts therein at issue. We can see that where a homestead has been once ascertained, there might be a presumption of its continuance until such time as there might be a different ascertainment under the statute, and in our judgment the Macke-Byrd case should have been confined to this one issue, and when so confined it is correct.

We have in this State the following statute, section 3751, Revised Statutes 1899:

"Judgments and decrees obtained in any court of record in this State shall, upon the filing of a transcript thereof in the office of the clerk of the circuit court or of any other county, be a lien upon the real estate of the person against whom such judgment or decree is rendered, situate in the county in which such transcript is filed."

Now, opposed to the broad provisions of this statute, we have the homestead act. This first-named statute makes such judgment a lien upon all real estate owned by the judgment debtor. But with it we must read the homestead act. This act, so far as applicable, reads:

"The homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided; such homestead in the country shall not include more

217 Sup—17

than one hundred and sixty acres of land, or exceed the total value of fifteen hundred dollars; and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars.'' [Sec. 3616, R. S. 1899.]

Following this is section 3617, which reads: ''Whenever an execution shall be levied upon the real estate of such housekeeper or head of a family, of which such homestead may be a part, or upon such part of any homestead as may be excess of the limitation of the value thereof created in section 3616, such housekeeper or head of a family shall have the right to designate and choose the part thereof to which the exemption created in section 3616 shall apply, not exceeding the limited value; and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall, first being sworn to a faithful discharge of their duties, fix the location and boundaries of such homestead, and the sheriff shall then proceed with the levy of such execution upon the residue of such real estate, as in other cases; and such proceedings in respect to the homestead shall be stated in return upon such execution.''

When these several statutes are read together, we are of opinion that a reasonable construction thereof will give the creditor a judgment lien against all surplus of quantity, and this is the only question before us. Under the first section quoted a lien is created as against all real estate, which lien under another section has a life of three years. The homestead act says, however, that no levy can be made upon the homestead. The word homestead as here used means a tract of land falling within the statutory limitations as to quantity, and we might add, value, although not herein involved. We have properly construed the homestead act to mean that no lien attaches to a homestead prop-

er, that is, to the tract owned, occupied and claimed as a homestead, when it falls within the statutory limitations as to quantity and value. But, in our judgment it will not do to say that if the judgment debtor owns one thousand acres of land, no lien is created by the rendition of the judgment as to all the excess over and above the hundred and sixty which might be selected for the homestead. To so construe the statute is to give no lien from judgments secured until levy is made and the homestead selected, appraised and admeasured, and would be but to encourage fraudulent conveyances between the time of the judgment and the actual setting aside of the homestead. Or, as in this case, there would be a race between the judgment creditor and the non-judgment creditors as to which could first secure title, and this, too, in face of the statute making the judgment a lien upon all real estate for three years. As we read these several statutes, a judgment is a lien for three years against all real estate held by the judgment creditor save and except his home-stead, and his homestead means a tract of land coming within the statutory limitations as to value and quantity. Pending this lien, one who buys by private sale from the owner the homestead tract, greater in either value or quantity than the limits fixed by the statute, takes the surplus subject to the lien. Of course there could not be a sale of the surplus, and thereby an enforcement of the judgment lien, until the homestead had been selected and admeasured. In other words, in our judgment wherever there is a surplus in the home-stead tract, either in value or quantity, there is a judgment lien as to such surplus, leaving it to a future selection and admeasurement to determine the exact dimensions of the said surplus.

In the case at bar, which is one in ejectment for the surplus tract, which was sold under execution without the statutory admeasurement of the homestead, the question arises as to whether or not such action should

prevail. Under the statute, when the officer comes with his execution the judgment creditor has the right to select the portion of the tract which he may desire for his homestead. In this case it appears that he and the defendant discussed the fact that he had more land than he could hold under the statute; that he then selected the eighteen square rods, or thereabout, which he could hold, and deeded away the surplus. In a case of this kind, where the matter of surplus is dependent solely upon quantity rather than value, we are of opinion that the judgment creditor, as well as the purchaser from him, are bound by this selection thus made, as fully as if it had been made under an execution. The debtor was at the trial claiming the remainder as a homestead, and admits that he was deeding the surplus to defendant, with knowledge of all the facts. By deeding the surplus, if execution had been issued and the statutory proceeding followed, the judgment creditor could not have done other than claim the property selected and held by him, because of his conveyance.

Considering this case from its four corners, the judgment of the circuit court is wrong, and the same should be reversed and remanded with directions to find for the plaintiff and enter judgment in accordance with such finding after having ascertained the reasonable value of the rents and profits. This being our judgment, such will be the order.

But, as these views are in conflict with our construction of the broad and unnecessary holding in the Macke-Byrd case, and as that is a case in which the whole court participated, we think this cause should be certified to the Court in Banc for its final determination, to the end that the broad language used may again pass under review. All concur.