WILLIAM H. CHILDERS, Appellant, v. NAPOLEON B. PICKENPAUGH and JACOB W. PICKENPAUGH.

(No. 13657.)

Division One, April 13, 1909.

1. **FRAUDULENT CONVEYANCE: General Denial: Claim of Homestead: Not Pleaded.** As a general rule a homestead right as a defense must be pleaded, but in those cases where the gravamen of the petition is fraud, a general denial is sufficient to authorize proof of a previously assigned homestead, as disproving the charge of fraud. Where the purpose is to set aside a conveyance as having been made in fraud of the grantor's

creditors, one way of disproving the fraud is by showing that the land was a homestead and that therefore the conveyance could not be a fraud, either in law or fact, and that may be shown under a general denial.

2. **HOMESTEAD: Assignment: Payment of Judgment.** Where execution has issued under a judgment and homestead has been assigned and levy made, a payment of the judgment before sale and a return of execution satisfied render the execution *functus officio*, and the property is left just as if no execution had issued, and just as if no steps to assign homestead had been taken; and under a subsequent judgment and execution the homestead may be assigned in other lands,' and if under that execution the sheriff sells some of the land that had under the former assignment but not under the later been set aside as a homestead, the sale is not void.

3. ———: ———: **Exception.** Where homestead is assigned, the homesteader may go to the court issuing the process and file exceptions, and if they are sustained a reassignment may be made. But if he makes no complaint to the court, the assignment is complete and its metes and bounds fixed.

4. **JUDGMENT: Lien: Before Assignment of Homestead.** A judgment becomes a lien from the date of its rendition on the debtor's land not embraced in his homestead. The lien is not deferred until the assignment of homestead and levy of execution upon the balance. The judgment never becomes a lien on the homestead, but on so much of the land as is not embraced in the homestead assigned subsequently to issuance of execution the judgment becomes a lien from the date of its rendition, and will take precedence over a deed made after judgment but before execution.

5. ———: ———: **Before Delivery of Deed.** Where a deed is executed on the day judgment is rendered but is not delivered until the next day, or until late at night of the same day, the judgment takes precedence, and the deed must yield to the judgment lien.

Appeal from Putnam Circuit Court.—*Hon. Geo. W. Wanamaker,* Judge.

REVERSED AND REMANDED *(with directions).*

*E. M. Harber, A. G. Knight* and *N. A. Franklin* for appellant.

(1) The court erred in finding for defendants and rendering judgment against plaintiff on the first count

of his petition. (a) Every conveyance of land made with intent to hinder or delay creditors in the collection of their lawful demands shall henceforth be deemed and taken as void at the suit of creditors. R. S. 1899, sec. 3398; Kurtz v. Troll, 175 Mo. 512; Davidson v. Dockery, 179 Mo. 687; Baer, Seasongood & Co. v. Lutter, 85 Mo. App. 317. (b) Respondent Jacob W. Pickenpaugh had direct and positive knowledge at the time he accepted the deed to the northwest quarter of section 7 on the 26th day of April, 1904, that at the November term, 1903, the case of Harber & Knight et al. v. N. B. Pickenpaugh had been continued on the application of defendant to the April term, 1904, and that a judgment was then and there rendered against the defendant for costs, and a knowledge of these facts renders his deed invalid. Jackson v. Myers, 18 Johns. 425; Jackson v. Terry, 13 Johns. 471; Eigenburn v. Smith, 98 N. C. 207; Burgert v. Borchert, 59 Mo. 80; State v. Nauert, 2 Mo. App. 595; 20 Cyc. 481. (2) The court erred in finding for defendants and rendering judgment against plaintiff on the second count of his petition. (a) The law of this State is that the lien of a judgment takes precedence over prior unrecorded deeds. And in this case, even though there was no fraud in the execution and delivery of the deed, yet if it was not recorded at the time of the rendition of the judgment in the case of Harber & Knight et al. v. N. B. Pickenpaugh, the purchaser at the execution sale acquired a superior title, and the finding for defendants on the second count of plaintiff's petition was error. R. S. 1899, sec. 3713; Jones v. Luck, 7 Mo. 551; Hill v. Paul, 8 Mo. 479; Reed v. Austin, 9 Mo. 722; Frothingham v. Stacker, 11 Mo. 77; Cravens v. Rossiter, 116 Mo. 344; Hollingsworth v. Thompson, 5 Harr. (Del.) 432; Hockman v. Hockman, 93 Va. 455; Boyer's Estate, 51 Pa. St. 432. (b) The sheriff's deed was conclusive evidence of the right to possession in appellant against respondent N. B. Pickenbaugh, and all claim-

ing under him after the rendition of the judgment in favor of Harber & Knight et al. Crowley v. Wallace, 12 Mo. 143; Winson v. Affalter, 49 Mo. 263; Hale v. Henrie, 27 Am. Dec. 289; Freeman on Executions, sec. 333; Jackson v. Ramsey, 3 Cowan 75. (3) The deed to the northwest quarter of section 7-65-20, having been executed, delivered and recorded after the rendition of the judgment under which this sale was made, was in law fraudulent and void as to creditors, and having refused to designate to the officer with the execution his homestead, if he had one, or choose a homestead of his own selection, respondent N. B. Pickenpaugh and his grantee are estopped from claiming any other than the homestead set out by the commissioners at the time of this levy, and any evidence of a former homestead was immaterial and should have been excluded. R. S. 1899, sec. 3617; Porter v. Valentine, 41 N. Y. Supp. 507; Morressey v. Ingham, 111 Mass. 63; Skinner v. Stouse, 4 Mo. 96; Campbell v. Johnson, 44 Mo. 251; Longsworth v. Aslin, 106 Mo. 159; Manning v. Coal Co., 181 Mo. 376; Garrett v. Wagner, 125 Mo. 462; State ex rel. v. Emmerson, 74 Mo. 607; Linck v. Troll, 84 Mo. App. 49; Thompson on Homestead, sec. 2. (4) The officer with the execution having declared to the execution debtor his rights as the head of a family, a corresponding duty was then cast upon the execution debtor to designate his homestead, if he had one, and the law will not permit him to remain silent when he should speak, and then after the officer, acting upon his silence, pursues the course laid down by the statutes, and the rights of others become affected by reason of his silence, allow him or his grantees to set at defiance the solemn acts of the officer or treat as a farce the dignity of the law. R. S. 1899, sec. 3163; Landrum v. Bank, 63 Mo. 48; Schradski v. Albright, 93 Mo. 44; Lollement v. Detert, 96 Mo. 183; Myer v. Nickerson, 100 Mo. 599; Springfield Grocer Co. v. Walton, 95 Mo.

App. 526. (5) If a former homestead had been set out to him embracing this land, the conclusions of the law drawn from the facts stated made such former homestead new matter of defense, and as such it was necessary for respondent to have pleaded it, otherwise that question was not legitimately before the court and no evidence was admissible in relation to it. Its reception was therefore error. Bealey v. Blake, 153 Mo. 675; Smith v. Thompson, 169 Mo. 560; Morehead v. Morehead, 25 S. W. (Ky.) 751; Cooper v. Arnett, 26 S. W. (Ky.) 811; Davidson v. Dishman, 59 S. W. (Ky.) 326. (6) A general traverse of the allegations of the petition under the Code will not authorize any evidence on the part of the defendant, except such as tends directly to prove some fact alleged in the plaintiff's petition, and there being nothing in the answer to warrant the reception of evidence of a former homestead, the evidence in relation to it should have been excluded. Bliss on Code Pleadings, sec. 352; Benuett v. Seymour, 6 How. Prac. 298; Northup v. Ins. Co., 47 Mo. 444; Brooks v. Blackwell, 76 Mo. 309; Musser v. Adler, 86 Mo. 449; Muz v. Glenn, 38 Mo. App. 98; Addington v. Allen, 11 Wend. 84; Morehead v. Morehead, 25 S. W. (Ky.) 751; Cooper v. Arnett, S. W. (Ky.) 811; Davidson v. Dishman, 59 S. W. (Ky.) 326. (7) Even though it was unnecessary under the Code to plead a former homestead as a defense, yet when respondent N. B. Pickenpaugh refused to designate that homestead to the officer with the execution, such refusal was in law a declaration that he had abandoned such former homestead. Alt v. Bank, 9 Mo. App. 91; Weinrich v. Koelling, 21 Mo. App. 133; Stotesbury v. Kirtland, 35 Mo. App. 148; State ex rel. v. Koch, 47 Mo. App. 269; Lincks v. Troll, 84 Mo. App. 49; State ex rel. v. Emmerson, 74 Mo. 607; Garrett v. Wagner, 125 Mo. 462; Thompson on Homestead, sec. 2.

*B. L. Robinson, Lorenzo Jones* and *Higbee & Mills* for respondents.

(1)   The judgment was not a lien on any part of this homestead, no matter what may have been its value at the time Pickenpaugh conveyed it to his father, and the deed conveyed all of his interest in said land, free from any lien of said judgment. This judgment lien never attached to this land. Macke v. Byrd, 131 Mo. 682. This homestead was regularly set off under an execution in favor of the National Bank, as appears by the sheriff's return, read in evidence upon the trial of this cause without objection. Sec. 3617, R. S. 1899. The report needed no confirmation by the court. Guinan v. Donnell, 201 Mo. 213; Creech v. Childers, 156 Mo. 343; Bank v. Guthery, 127 Mo. 193; Spratt v. Early, 169 Mo. 370; Moore v. Wilkerson, 169 Mo. 334. The creditor of a homesteader has no right to complain of any disposition he may make of the homestead. If he conveyed it to defeat the payment of debts, if he owed them, the creditor cannot complain. There can be no fraudulant conveyance of a homestead. Stam v. Smith, 183 Mo. 469. (2)   It is well settled in this State that a judgment lien does not attach to a homesteader's land, no matter what the extent of the value of it may be, until the homestead has been assigned. And the debtor's homestead having been assigned, it is immune from the lien of a judgment, no matter how much it may have increased in value, until the homestead is reassigned. Vogler v. Montgomery, 54 Mo. 584; Spratt v. Early, supra.

GRAVES, J.—This is a companion case of Childers v. N. B. Pickenpaugh and C. A. Pickenpaugh, decided at this term of the court, and reported at page 376 of this Report. The two causes were tried together in the court below, and submitted to the court upon the same evidence. The evidence has been set out by

Woodson, J., at length in the other case and a repetition thereof herein would be superfluous.  One additional question in this case requires specific mention of some of the facts.  From the evidence it appears that on the same day a judgment for $1,750 and costs was rendered against N. B. Pickenpaugh by the circuit court of Putnam county in favor of Harber & Knight and Childers Brothers, the said N. B. Pickenpaugh made a deed to the northwest quarter of section 7 in township 65 of range 20, Putnam county, Missouri, to his father, J. W. Pickenpaugh.  This deed was delivered to the father in the State of Iowa at some time between 9 and 12 o'clock at night of April 26, 1904.  On April 26th the judgment was rendered, so that there was a judgment prior to the delivery of the deed.  The deed was not recorded until later.  N. B. Pickenpaugh had originally four hundred and eighty acres of land.  Of this, three hundred and sixty acres was in township 65 of range 20; thus, the southwest one-fourth (fractional) of section 6, containing one hundred and twenty acres or a little more; the northwest one-fourth (fractional) of section 7, containing a hundred and twenty acres or a little more; the north half of the northeast quarter of section 7, containing eighty acres; and the northwest quarter of the northwest quarter of section 8, containing forty acres.  The other one hundred and twenty acres was in section 36 of township 66, range 21.  The eighty and forty above described is the land involved in the companion suit, being the land alleged to have been sold to the son, C. A. Pickenpaugh.  The south eighty acres of the northwest quarter (fractional) of section 7 is the land involved here.

On April 10, 1903, the National Bank of Unionville procured a judgment in the circuit court of Putnam county against N. B. Pickenpaugh and John H. Bishop for $261.63, upon which execution was issued, and the sheriff finding no personal property proceeded to levy upon lands.  The sheriff's return shows that the debt-.

or, Pickenpaugh, refused, after notice, to select his homestead, and he selected three appraisers, who set out his homestead. The return shows that this was done on May 28, 1903, and that as and for his homestead there was set off the northwest one-fourth (fractional) of section 7 and other land in the southwest one-fourth (fractional) of section 6, and then levied upon the remainder of the lands in said township 65. Under this levy the lands were advertised for sale on August 27, 1903. The return then further says:

"I further state that the foregoing property was duly advertised for sale by R. L. Gray, sheriff, to be sold on Thursday, August 27, 1903, but that the defendant, N. B. Pickenpaugh, on August 26, 1903, paid to me, successor of the late sheriff, R. L. Gray, cash to the amount of $310.11, which I applied as follows: (Items omitted). And I return this amount as satisfied." [Signature of Sheriff.]

The word "amount" is evidently a misprint in the abstract. It should be "execution" for the sum paid was the full amount of debt and costs called for by the execution.

This execution being fully satisfied, no further proceedings were had thereunder. On the day of its satisfaction, August 26, 1903, the deed to C. A. Pickenpaugh to the eighty and forty above described was made under the circumstances fully described and set out in Judge Woodson's opinion.

After Harber & Knight and Childers Brothers got their judgment, an execution was issued, and the sheriff, finding no personal property, proceeded to levy upon the lands. Before doing so he notified Pickenpaugh of his exemption rights, but he refused to point out or select the homestead. The house in which he lived was on the land in section 6. Upon his refusal to designate his homestead the sheriff appointed three appraisers as required by law, who after taking the required oath, set off to him as his homestead the fol-

lowing as described in their certificate: "The fractional southwest quarter of section six, and the north forty acres of the northwest fractional quarter of section seven, all in township sixty-five, range twenty, being in quantity the amount of one hundred and sixty acres, all situated in Putnam county, Missouri, and that we appraise the same as so designated and fixed by us to be of the value of one thousand dollars over and above encumbrances."

After this land was set off as a homestead, the sheriff levied upon all of the remaining lands formerly held by N. B. Pickenpaugh, including the one hundred and twenty acres in section 36, mentioned *supra*. Sale was had and the lands levied upon were purchased at said sale by the plaintiff herein, William H. Childers, one of the firm of Childers Brothers.

By the first count of the petition herein the plaintiff seeks to set aside the deed to J. W. Pickenpaugh on the ground that it was fraudulently made to hinder, delay and defraud the creditors of N. B. Pickenpaugh and especially Harber & Knight and Childers Brothers, and that J. W. Pickenpaugh knew of and participated in such fraud. The second count was one in ejectment, laying ouster as of September 8, 1905, alleging the monthly rents to be $20, and damages $50 with prayer for judgment for possession as well as for the damages and monthly rents aforesaid.

Upon a trial before the court, judgment went for the defendants, and against plaintiff for costs. From this judgment, after unsuccessful motions for a new trial and in arrest of judgment, the plaintiff duly appealed to this court.

The evidence pro and con upon the question of fraud is fully set out in the companion case of William H. Childers v. N. B. Pickenpaugh and C. A. Pickenpaugh, to which we make reference, as both cases were tried upon the same facts. This sufficiently states this case.

I.  In the companion case, WOODSON, J., has discussed fully all the facts as they bear upon the question of fraud. He discusses the mysterious and unexplained disappearance of a large quantity of live stock owned by N. B. Pickenpaugh just before the $1,750 judgment. He discusses fully the alleged sale of the one hundred and twenty acres of land to the son, C. A. Pickenpaugh, and in paragraph three of the opinion discusses the transactions involved in this suit.  He reaches the conclusions that both of these sales were made to defraud creditors, especially Harber & Knight and Childers Brothers.  In his conclusions upon the question of fraud, we heartily concur.  And in this case the trial court was in error in not setting aside the deed to J. W. Pickenpaugh involved in this case, unless it be for reasons urged, which we discuss next.

II.  By counsel for the defendants it is contended that all the land involved in this suit had been set off to N. B. Pickenpaugh as his homestead, in the case of National Bank of Unionville v. N. B. Pickenpaugh and John H. Bishop, and that a conveyance thereof could not be in fraud of creditors.  To this the plaintiff replies by saying (1) that no former setting out of this land as a homestead is pleaded, (2) that under the facts in evidence there never was a completed setting out of the homestead in the bank case, and (3) that Pickenpaugh having refused to select and point out his homestead when the sheriff notified him of his rights under the execution on the judgment for $1,750, and thus compelled and induced the sheriff to appoint appraisers to appraise and fix the boundaries of a homestead, he is precluded from now disputing the homestead to set out by the appraisers in this collateral way.

It might be well to here state that the answer of the defendants were (1) a general denial, and (2) a

plea to the effect that the sale was one made in good faith and not to defraud creditors.

That this former homestead, if in fact and law there was such, should have been specifically pleaded we think is true in most cases. In 10 Ency. Plead. & Prac., 81, the rule is thus stated: "Wherever in an action property is sought to be recovered out of which a homestead is to be claimed, the right of homestead exemption should be set up in the pleading."

To this, however, the respondents urge that the evidence as to the first assignment of a homestead went in without objection, and therefore plaintiff cannot complain of the action of the trial court, if in fact the trial court found that there was no fraud in the conveyance. In cases of alleged fraud the evidence is permitted to take a broad range, and we are not inclined to think that the general rule above announced has been applied to this character of a case.

The real issue here was, as stated in the petition, that said deed was made "for the purpose of cheating, hindering and delaying said parties named, and others in the collection of their claims and demands, and for the purpose of defrauding, cheating, hindering and delaying his said creditors, and without any good or valuable consideration therefor."

To this specific charge of fraud the defendants interposed the answer above indicated. The general denial put in issue the question of fraud. Now, it occurs to us that even under a general denial the defendants could show any state of facts which would rebut or disprove the charge of fraud, and one way of doing that would be to show that the property was of such character that there could not, either in law or fact, be a fraud perpetrated in the conveyance thereof. In our judgment, whilst as a general rule a homestead right must be pleaded, yet in those cases where the gravamen of the petition is fraud, then a general denial is sufficient

to authorize a proof of a previously assigned homestead, as disproving the charge of fraud.

There is more difficulty in the second insistence of the plaintiff, *i. e.,* that there never was a completed assignment of this homestead under the bank judgment. Had there been a sale under this bank judgment and the execution returned showing the homestead assignment, there would be no question, but such are not the facts. The amount of the execution was paid and the execution returned satisfied. This payment took all the property levied upon out of the meshes of the law. This payment left the defendant in that suit *in statu quo* as to all of his property. We take it that there are two ways in which a judgment debtor can relieve himself of the preliminary act of the appraisers in meting out to him a homestead out of his property. First, he can go to the court issuing the process and complain, and upon a showing have the report of the appraisers set aside. In 10 Ency. Plead. & Prac., 75, it is said: "Exceptions to the report of commissioners assigning homestead should be made to the court from which process issued and to which the assignment is to be returned; and such report cannot be impeached in a collateral proceeding." The author cites in support thereof, among other cases, the case of Lallement v. Detert, 96 Mo. 182. If the report is set aside, the judgment debtor is left just where he was before the preliminary act of the appraisers. If on the other hand his exceptions were overruled and the report confirmed, the homestead limits become fixed, at least until there is a re-assignment by reason of increase in value. Or if the judgment debtor fails to pay the debt and fails to except to the action of the appraisers and the execution with report of appraisers and report of sale is filed, then such assignment of homestead is complete and the metes of the homestead fixed. It therefore appears that the completion of the home-

stead assignment depends upon his conduct after the preliminary step is taken by the appraisers.

But in the second place the judgment debtor can obviate the completed assignment of the homestead by his own act, independent of the court, as fully as he could by exceptions filed in the court. He can pay the judgment or execution debt and thus fully relieve his land, not only of the levy under the execution, but all other incident steps taken under the execution and levy. When he pays the full amount of the execution, the execution becomes *functus officio,* and his land is relieved from the levy and all the incidents leading up to and connected with the levy, including the preliminary act of the appraisers. When he has discharged the debt, before sale and before return of the execution, he and his property are left just as if no execution had issued or any steps been taken thereunder. We, therefore, conclude that there was no complete assignment of a homestead. By a completed assignment of homestead is contemplated the action of the sheriff, the appraisers and the court. [Macke v. Byrd, 131 Mo. 682.]

The judgment under which plaintiff bought was entered April 26, 1904. No execution was issued until May 7, 1905, and no attempt to levy under the writ was made until August 9, 1905. From this it is argued that no lien attached to any part of the homestead premises of at least three hundred and sixty acres, until the assignment of the homestead had been made. In support of this we are cited to Macke v. Byrd, *supra.* The court *in Banc* has just gone over this question in the recent case of White v. Spencer, 217 Mo. 242, in which case we disapprove of the broad language of the Macke-Byrd case, and hold that a lien attaches to the surplus in quantity from the rendition of judgment. This point will have to be disallowed.

Under the judgment for $1,750, the defendant had his homestead duly appraised and set off by the officer

and the appraisers. He took no steps in court or otherwise to thwart this action, in that case, and such act cannot be collaterally attacked in this case. [Lallement v. Detert, 96 Mo. 182.]

It is not necessary to discuss other questions raised. From what has been said it follows that this case should he reversed and remanded with directions to the trial court to enter a judgment for plaintiff canceling the deed as to the land involved, made by N. B. Pickenpaugh to J. W. Pickenpaugh, and proceed with the further hearing of this cause under the second count of the petition. It is so ordered.

All concur.